## LITTLE *v.* LARRABEE.

Where the finding of the jury, or the record of it, is defective or erroneous in a matter of form, having no connexion with the merits of the case, nor affecting the rights of the parties, the Court will amend it, and render the verdict and record pursuant to the issue.

But where the jury themselves have erred in matter of substance, as by returning a verdict for the wrong party, or for a larger or smaller sum than they intended, and thereupon have separated, the Court will not amend the verdict, but will set it aside.

To *such* mistakes the affidavit of the jurors is admissible.

THIS was a writ of entry in which the demandant counted upon his own seisin within thirty years and a disseisin by the tenant. At the trial, which was upon the issue of *nul disseisin,* the finding of the jury was, that the tenant did disseise the demandant in manner and form as alleged in the declaration; which verdict was received and recorded by the Court, and the jurors separated.

After this the jurors discovered that they had misunderstood the legal terms in which they had drawn up their verdict, and that they had returned a verdict for the demandant, instead of one for the tenant, which last was their sole intention; and they all made a joint affidavit stating these facts.

And now *Orr* and *Fessenden* for the tenant moved that this affidavit of the jurors be received and placed on file, which the Court, *de bene esse,* permitted: and thereupon they moved that the verdict and record be amended by the affidavit, by changing the finding to a verdict in favour of the tenant. They insisted on the right of the Court to amend the finding even without affidavit; and cited *Edwards v. Hopkins, Doug.* 376. *Williams v. Bredon,* 1 *Bos. & Pul.* 329. *Jackson v. Dickinson,*

15 *Johns.* 309.   But they relied chiefly upon *Cogan v. Ebden,* 1 *Burr.* 383.

*Whitman* and *Little,* for the demandant, did not deny the existence of a remedy ; but they contended that it was by setting aside the verdict, and not by amending it.   2 *D. & E.* 281. *Apthorp v. Backus, Kirb.* 407.   *Blackley v. Sheldon,* 7 *Johns.* 32.   *Root v. Sherwood,* 6 *Johns.* 68.   *Dana v. Tucker,* 4 *Johns.* 487.

Mellen C. J. delivered the opinion of the Court as follows.

It appears by the defendant's motion and the affidavits of the jury, taken *de bene esse* in support of it, that they intended to return their verdict in favour of the tenant; although as written and *signed by the foreman* and *affirmed by the Court,* it is a plain and unequivocal verdict in favour of the demandants :— or, in other words, that they used language which did not convey their meaning.—This was not discovered till after the jury had separated and had an opportunity of conversing with the parties ; by means of which the mistake was ascertained.

The questions are, whether the Court can permit the verdict so to be amended or altered as that it may stand a verdict in favour of the tenant; and, if not,—then what is the proper course to be pursued?

The decision of these questions depending on precedents, we have examined the authorities relating to the subject and will now state the result.

There are two classes of cases to be found in the books respecting erroneous or defective verdicts.

The *first* class contains those cases in which the incorrectness or defectiveness of the verdict or error in the record of the judgment consists in something merely *formal* and which has no connection with *the merits of the cause ;* where the amendment, when made, in no respect impairs or changes *the rights of the parties ;* but may only prevent the disturbance of the proceedings by writ of error ; or, by correcting clerical mistakes, render the record consistent and the verdict pursuant to the issue.—Of this description are the following cases : 1 *Salk.* 47, 53.   *Cro. Car.* 144, 338.   *Cro. Eliz.* 677.   *Cro. Jac.* 239. *Cro. Eliz.* 112.   *Lord Raym.* 335.   2 *Str.* 1197.   4 *Co.* 52. 3 *Bulstr.* 181.   *Hett.* 52. and numerous others which it is unnecessary to cite.

Little *v.* Larrabee.

The *second* class contains those cases where the error has been committed by *the jury;* either by returning a verdict against the *wrong party;* or, if not so—for a *larger* or *smaller* sum than they intended : and those where, if the amendment or alteration should be made and the *damage should be increased* or *diminished,* or the *verdict reversed,* the rights of the parties would be immediately affected and changed : and this, too, after the jury had, by their separation, become accessible to the parties and subject to their influence.—Of this class are the following cases, viz.—

" A motion for a new trial upon affidavits of eleven of the " jury that they had agreed on a verdict for the plaintiff and " five shillings damage : but the foreman, by mistake, gave a " verdict for the defendant. A new trial was granted." 21 *Vin. Abr.* 483.

In *Woodfall's* case, 5 *Burr.* 2667, a doubt arose as to the meaning of the jury in the verdict they had given. Lord *Mansfield* says, " It is impossible to say with certainty what " the jury really did mean :—probably they had different " meanings. If they could possibly mean *that,* which, *if ex-* " *pressed,* would acquit the defendant, he ought not to be con- " cluded by this verdict. If a doubt arises from an ambiguous " and unusual word in the verdict, the Court ought to lean in " favour of a *venire de novo*"—and it was awarded accordingly. In that case the doubt rose on the face of the verdict; no affidavit having been given.

In *Spencer v. Goter,* 1 *H. Bl.* 78, the Court decided that they could not *alter* a verdict, unless it clearly appeared on the face of it, that the alteration would be agreeable to the intention of the jury; and that the proper remedy in that case was a *new trial.*

In the case of *Rex v. Simmons,* 1 *Wils.* 329, a *new trial* was granted ; the jury having stated on affidavit that they did not mean to give such a verdict as was in fact recorded by the Court.—*Simmons* was charged with putting into the pocket of one *Ashley* three ducats with a malicious intent to charge him with felony.—The jury did not intend to find the defendant guilty of the *criminal intent*—but only of the *fact* of putting the ducats in *Ashley's* pocket. But, as the Judge reported, by

some mistake or misapprehension of the Court or the jury or both, a *general verdict* of guilty was entered—*Lee*, C. J. observed that the verdict was taken by mistake; and therefore that it was not granting a new trial upon any *after-thought* of the jury.

"The Court will not set aside a verdict upon the affidavit of a juryman that it was decided by lot." 1 *New Reports*, 329.

"But the affidavits of jurors will be admitted to shew that a " mistake had been made in taking their verdict and that it was " entered differently from what they intended."—The Court observed, "What the jurors have deposed must be noticed by " the Court, because their affidavits are not to what transpired " while deliberating on their verdict, but as to what took place " in open Court in returning their verdict." 15 *Johns.* 309.

"The Court will, under circumstances, grant new trials on " the affidavit of jurors that their verdict was taken contrary " to their meaning; but they are very cautious how they do this, " as it may be of dangerous tendency." 1 *Sellon's Practice*, 488.

We have examined the case in 1 *Burr.* 385, which is relied upon by the counsel for the tenant.—It does not appear to have ever received any final determination, so as to assume the authority of a decided case; and it appears also that the cases cited by *Burrow* in support of it, are either irrelevant or else are those falling within the *first* class abovenamed. We therefore cannot consider it as shaking the authority of those we have stated as composing the *second* class.—In all those cases, the Court, instead of attempting to *correct* and amend the verdict and make it conformable to the intentions of the jury, as explained by them after it was affirmed, granted relief and corrected the mistake by *setting aside the verdict* and granting a *new trial.*—It is to be regretted that such a mistake should have been made in the present cause and that its consequences should be so serious and embarrassing to the parties. But the law is such that we *cannot* do any thing *more* for the tenant than set aside the verdict and grant a new trial; and, in the circumstances before us, we *ought not* to do *less.*

*Verdict set aside and new trial granted.*

Little *v.* Larrabee.

NOTE.  Respecting the admissibility of the affidavits of jurors to prove misbehaviour in the jury themselves the cases are contradictory.

The course formerly was to admit them.  *Metcalf v. Deane, Cro. El.* 189. adjudged in 32 *Eliz.* recognized as good law in *Vicarey v. Farthing, Cro. El.* 411. *Moor,* 452. *S. C.* 38 *Eliz.  Heylor v. Hall, Palm.* 325.  2 *Rol. Rep.* 61. *S. C.* 20 *Jac.* 1.  *Mellish v. Arnold, Bunb.* 51. 1719.  *Par v. Seames & al.* 1 *Barnes,* 320. 4to. ed. 8 *Geo.* 2.  *Phillips v. Fowler,* 2 *Com. Rep.* 525. *Prac. Reg.* 409.  *Barnes,* 441.  *S. C.* 9 *Geo.* 2.  Said *per Willes C. J.* to be the settled rule in *C. B. Norman v. Beaumont, Willes,* 487. 18 *Geo.* 2.  So in *Aylett v. Jewell,* 2 *Bl. Rep.* 1299. 19 *Geo.* 3.  In these cases the propriety of admitting such testimony does not seem to have been much questioned.

During this period there are only two decisions known to the contrary. *Prior v. Powers,* 1 *Keb.* 811. 16 *Car.* 2. and *Palmer v. Croule, Ander.* 382. 12 *Geo.* 2.

The old practice was first broken in upon by *Ld. Mansfield* in *Vaise v. Delaval,* 1 *D. & E.* 11. *A. D.* 1785. and it is now settled in *England* that the testimony of jurors to the *misbehaviour* of the jury in the finding of their verdict is not to be received.  *Jackson v. Williamson,* 2 *D. & E.* 281.  *Owen v. Warburton & al.* 4 *B. & P.* 326.  *Rex v. Wooler,* 2 *Starkie,* 111.  And the usage in the American Courts accords with the later English decisions.  *Cochran v. Street,* 1 *Wash.* 81.  *Price v. Warren,* 1 *Hen. & Munf.* 385.  *Dana v. Tucker,* 4 *Johns.* 487.  *Bridge v. Eggleston,* 14 *Mass.* 248.  *Cluggage v. Swan,* 4 *Bin.* 155. *per Yeates J.*  The earlier American cases of *Grinnell v. Phillips,* 1 *Mass.* 541. and *Smith v. Cheetham,* 3 *Caines,* 57. so far as they relate to this point seem to be overruled by subsequent decisions.

In *Connecticut,* the jurors, and the deputy marshal who had charge of them, being called to testify that they separated before agreeing on a verdict, were told by the Court, *Livingston* and *Edwards J. Circuit Court U. S.* that they could not be compelled to answer, as it was a misdemeanor ; but they might answer if they pleased.  *Howard v. Cobb,* 3 *Day,* 310.

In some of each class of these cases the misbehaviour complained of was in the jurors setting down each man a sum, and dividing the aggregate by twelve. If this be taken as the rule to fix the damages *absolutely,* it is a misdemeanor, and the verdict will be set aside.  *Smith v. Cheetham,* 3 *Caines,* 57.  But if it be only adopted as the mode to ascertain a reasonable mean, or measure of damages, without binding themselves at all events to abide the result, the verdict is good.  *Dana v. Tucker,* 4 *Johns.* 487.