## HOVEY & al. versus LUCE.

The defendant conveyed a dwellinghouse. It was but partly finished, and he gave an obligation to finish it. There was an erection, one and a half story high, with rooms for the family. In the rear of it, and annexed to it, was another erection, one story high, designed for a kitchen. Annexed to that was another unfinished erection, designed for a wash room and other appendages. *Held;* that this last erection was a part of the dwellinghouse, and that the obligation required the defendant to finish it for the uses originally designed, and in an appropriate workmanship.

On a motion to set aside a verdict for excessive damages, it is not competent to prove, *by the jurors,* their mode of computation.

COVENANT BROKEN. The trial was before SHEPLEY, C. J.

The defendant conveyed by deed to the plaintiffs, a lot of land in East Thomaston, on which stood a building principally finished, intended for a dwellinghouse, and described in the deed as "*a dwellinghouse.*" He took back a mortgage to secure a part of the purchase money. At the same time, he gave to the plaintiffs the following obligation : —

"Whereas I have this day sold unto" [plaintiffs] "a dwellinghouse, as per my deed to them of this date, and whereas said house is not fully finished, I hereby agree to cause said house to be finished in a workmanlike manner and to be well painted inside and out; also to have the fence round the same finished in the same manner as I have commenced doing; also to cause blinds to be put on said house, well made and painted, and hung with suitable latches for the same; — all of which I agree to do in a reasonable time, and to be done free of all charges to the said" [plaintiffs.]

There was testimony, tending to show the breach of the covenant, and also to show a performance of it.

The building or buildings upon the land, consisted of an erection, one and a half story high, with two rooms beside a bedroom. At the time of the sale this erection was very nearly completed on the outer and inner sides. In the rear, and annexed to that erection, was another erection one story high, designed for a kitchen, and annexed to that was another erection, designed for a wash room and other appendages.

The dimensions of this last erection were not proved. It was boarded, but not clapboarded; whether shingled, was uncertain. It was without floors or sleepers. There was no proof in what section or street of the town the house stood, or in what manner other buildings for the like use there were usually finished.

The plaintiffs resided in the house fifteen months. The defendant then took it into possession under the mortgage, which became foreclosed. Until it was so taken under the mortgage, the last mentioned erection, called the shed, remained unfinished, as at the time of the purchase. For that neglect to finish it, this action was brought.

A question arose, whether the covenants required the last named erection to be finished, and if so, in what manner.

The jury were instructed on this point *that,* if satisfied, that it was annexed to the other building, so that all the erections would constitute one structure, the defendant would be obliged to finish it in a manner suitable and appropriate to the other parts of the structure, as situated in the town and street where it was built; *that* defendant was not obliged to erect any separate building for a privy, but they would consider whether a suitable and appropriate finish would not require one to be prepared in some portion of the structure, or without it; *that* there did not appear to be any testimony to prove that the erection made in the rear was designed to be appropriated in any particular manner; and, *that* the mode in which it ought to be finished, if any further finish was required, must be inferred from the construction, appearance and situation of the other parts of the structure.

The Judge was requested to instruct the jury, that, if the plaintiffs would recover for any materials and labor expended on the woodhouse or buildings, other than "the dwellinghouse" itself, they should prove, that the same were not put into such a state of finish and completion by the defendant, as such buildings when finished, were usually put into in the vicinity of this dwellinghouse.

This request was refused, except as appears from the instructions given, as above stated.

A verdict was returned for the plaintiffs, which is to be set aside and a new trial granted, if any of the foregoing rulings, instructions, or refusals to instruct, were erroneous.

*Lowell*, for defendant.

The terms of the obligation refer to, and include only the single edifice, covered by one roof, which, in the common and ordinary use of the words, are signified by them. This is the proper construction to be given to the terms. 1 Bouvier's Law Dict. title House, p. 470, and authorities there cited; 2 Russel on Crimes, 56 and 489, and authorities in the text and notes; *Howland* v. *Leach*, 11 Pick. 151; *Hawes* v. *Smith*, 12 Maine, 429; *Littlefield* v. *Winslow*, 19 Maine, 394; *Robinson* v. *Fisk*, 25 Maine, 401.

The instruction, that " the defendant would be obliged to finish the shed in a manner suitable and appropriate to the other parts of the structure, as situate in the town and street where it was built," was incorrect. The agreement was to *finish* what was begun, not to do what was *suitable and appropriate*.

The parties had determined what finish they would have, and what should be a suitable manner of finish, having in view their wants, their means and the expense.

There was no evidence in the case calling for such an instruction; for " the dimensions of the building" were not proved, nor was there any proof of the section of the village, or of the street where the house stood, nor in what manner other buildings, of a like character there, were finished.

For similar reasons, the last branch of the instructions were opposed to the proper construction of the instrument, and not called for by any evidence in the case. *Blake* v. *Irish*, 21 Maine, 450.

The Judge having ruled that the shed was embraced in the defendant's covenants, then the instructions requested by defendant's counsel, were proper.

The instruction, that the jury would consider, whether a

suitable and appropriate finish would not require a privy to be prepared in some portion of the structure, or without, it was wrong. This is a question of the legal construction of a sealed instrument, and belonged exclusively to the court, and not to the jury. 1 Greenl. Ev. sect. 277, and notes and cases collected in the notes; *White* v. *Jordan,* 27 Maine, 370.

The defendant's covenant is not to be enlarged by construction, and the language employed no more requires a privy " in some portion of the structure, or without it," than it requires him to finish a stable, a woodhouse, a well, or a cistern.

The instructions were wrong, inasmuch as they did not indicate to the jury, what could be a reasonable time for the performance of the defendant's contract. *Greene* v. *Dingley,* 21 Maine, 131.

*Evans* and *Merrill,* for plaintiffs.

What constitutes a dwellinghouse? Is it only that part in which to sit, sleep and eat? or does it include all the portions necessary for comfort and for domestic purposes, agreeably to the customs of the neighborhood? " A man's house is his castle." He is as safe in the shed as in the parlor.

As to the extent of the finish, the Judge could have given no different instructions. There was to be unity of design, appropriateness. Whatever strikes the eye as suitable for the occasion, was requisite to be done. Till that was done, there was no finish to the work. Whatever the jury found to be the original plan, was to be carried out.

The requested instruction was substantially given.

The defendant objects that the court did not instruct, but left it with the jury to find, what was a reasonable length of time, in which the defendant should finish the house. But no request for such instruction was made. The work was not done during the fifteen months of plaintiffs' residence there. Surely that was the fullest extent of reasonable time.

Shepley, C. J., orally. — What was it designed by the obligation, that the defendant should finish? In the deed and in the obligation, the house is regarded as one structure. They

give no indication what part should be finished. If one offer to sell his house, can it be misunderstood what he intends? If the contract applies to one part only, to what part? The house was partly finished. We think it a reasonable and just construction, that the defendant should finish it to correspond with what had been already done. A reference to the part finished, would show whether the design had been carried out. The house was sold for family use. The instructions virtually left it to the jury, to decide what sort of finish the parties intended.

The court were not to instruct what was necessary to be proved, but what conclusions they should form, from what had been proved, relative to the matter in controversy. What was done in the vicinity to other houses, would furnish no safe rule. The house was to be finished to the extent originally designed, and in a suitable and appropriate manner.

We think the defendant's objections are not sustained.

---

There was also a motion to set aside the verdict, on the ground of excessive damage. Lowell proposed to read the deposition of the foreman of the jury, not to prove any misconduct, but simply to show how the computation was made up. He cited *Little* v. *Larrabee*, 2 Greenl. 37.

SHEPLEY, C. J. — The rule on this point is settled. To allow jurors to testify as to their mode of computation, would affect injuriously the whole administration of justice.

*Judgment on the verdict.*