John W. PATTERSON

v.

Raoul ROSSIGNOL and Theresa Rossignol.

Supreme Judicial Court of Maine.

Sept. 26, 1968.

Julian G. Hubbard, Portland, Woodman, Thompson, Willard & Hewes, by Richard D. Hewes, Portland, for plaintiff.

Lawrence P. Mahoney, Portland, for defendants.

Before WILLIAMSON, C. J., and TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

DUFRESNE, Justice.

On appeal by the plaintiff after jury verdict for the defendants.

### DENIAL OF MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.

Rule 50(b) M.R.C.P. provides as follows:

"Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within 10 days after the reception of a verdict, *a party who has moved for a directed verdict* may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance

with his motion for a directed verdict * * *." [Emphasis supplied].

The record reveals that the plaintiff made no motion for a directed verdict at the close of all the evidence as the rule requires. Under such circumstances there was no reservation by the trial court of the legal questions raised by such a motion.

■ The underlying philosophy of Rule 50(b) necessitates, as an indispensable component of this relatively new procedural device of motions for judgment non obstante veredicto [n. o. v.], the previous submission to the court of a motion for a directed verdict at the close of the entire case. Such is determinative of a party's right to make and of a court's power to entertain a motion for judgment n. o. v. under the rule. See Field and McKusick, Maine Civil Practice, p. 414, Commentary § 50.4; Mutual Ben. Health & Accident Ass'n v. Thomas, 123 F.2d 353 (8th Cir. 1941); Baltimore & Carolina Line, Inc. v. Redman, 1935, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636; 69 A.L.R.2d 449, at page 478, § 12.

The motion for judgment n. o. v. was unknown in our practice prior to the adoption of the Maine Rules of Civil Procedure in 1959, see Maglathlin et al. v. Isaacson et al., 1953, 149 Me. 368, 102 A.2d 864, and its present availability must depend upon a party's compliance with all requirements of the rules relating thereto.

The obvious design of the rule, in addition to assuring protection to one's constitutional right to jury trial, (see Baltimore & Carolina Line, Inc., supra) was to accord more flexibility in the trial or appellate courts in making it possible for the entry of a final judgment contrary to the jury verdict if a directed verdict was wrongly denied, and thus save the parties the expense of a second trial which the former practice made necessary. The plaintiff was without standing to move for judgment n. o. v. in this case.

## DENIAL OF MOTION FOR NEW TRIAL

Plaintiff relied, as the first ground for his motion to the trial court to set aside the jury verdict and resultant judgment and to grant a new trial, upon the stated reason that defendant's attorney in his argument to the jury inferentially brought to their attention the fact that workmen's compensation insurance was present in the case. Plaintiff complains that defendants' counsel addressed the jury in the following manner: "Ladies and Gentlemen of the Jury, Brother * * * has reduced the expenses, hospital expenses and doctor bills to the blackboard in the sum of fifteen hundred and eight dollars. You need not worry about the plaintiff having to pay that sum of money out of his pocket." The defendants however contend that the language used in the argument was "There was no evidence that the plaintiff had to pay this sum out of his pocket."

■ The record does not officially disclose the exact statement of defense counsel about which plaintiff complains, nor does it indicate the specific setting in the argument when the alleged offensive assertion was made. Where there was no stenographic report of the arguments of counsel at trial, plaintiff should have proceeded in the preparation of a proper record to have the matter submitted to the court for settlement and approval as provided by Rule 75(m) M.R.C.P. [now 74 (n) M.R.C.P.]. Not only did the plaintiff fail to follow the ordained procedure in his attempt to submit this point to the decision of this Court, but the presiding justice in his denial of plaintiff's motion for new trial specifically stated that the defense counsel in his argument did not mention the word insurance or any statement which would lead the jury to believe that any insurance company was involved. Since the parties could not agree on the specific offensive language of defense counsel's trial argument nor on the con-

text in which it was made, and since the plaintiff did not secure the approval of the justice who heard the case upon a settled version of the incident, this question is not properly before us on appeal.

■ Plaintiff's compliance with the requirements of the rules however would not have yielded any appellate relief from a situation he himself condoned. Indeed, plaintiff raised no objections at the time of the illegitimate argument nor did he seek a mistrial then or at any time before the submission of the case to the jury. Our Court has ruled that such lethargy or trial strategy is fatal to afterthought appellate redress. Knowlton v. Ross et al., 1915, 114 Me. 18, 95 A. 281. Deschaine v. Deschaine, 1958, 153 Me. 401, 140 A.2d 746.

■ The plaintiff further moves for a new trial because of the following alleged errors of the trial judge: (1) it was error for the Court not to declare a mistrial sua sponte when the foreman first reported a unanimous verdict for the defendants which the poll of the jury disclosed was not unanimous; (2) it was error for the Court not to inquire from the lone dissenting juror upon request of the plaintiff as to the reasons for her change of mind when after renewed deliberations and a re-polling of the jury she assented to the originally announced verdict for the defendants; (3) it was error for the Court not to inquire from the lone dissenting juror as to whether her ultimate vote for the defendants was "of her own free will and accord" or obtained through coercion.

■ Unanimity in the verdict of the jury was required in the instant case since the parties had not stipulated that they would accept the verdict of a stated majority of the jurors as they could have under Rule 48, M.R.C.P. Any party has the right to ascertain through the polling of the jury whether the verdict as announced in open court meets with the individual assent of each juror. See Annotation in 71 A.L.R.2d at page 644 and cases cited under note 20. A juror, when polled,

has the right unquestionably to dissent from a verdict to which he has agreed in the jury room, since his vote must be directed by his own conscience.

■ And, where one or more of the jurors do dissent from the verdict, the jury may be required to retire to the jury room and give further consideration to the case so that they may possibly reconcile their views and ultimately reach unanimous agreement on the previous abortive verdict or on a new verdict. Rex v. Burdell, 1906, 11 Ont.L.Rep. 440, 6 Ann.Cas. 454; Botta v. Brunner, 1956, 42 N.J.Super. 95, 126 A.2d 32, affirmed on the reference point in 1958, 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331; 53 Am.Jur. Trial, § 1019; 89 C.J.S. Trial § 487(c). It would be both unwise and undesirable upon such an instance for the Court either to argue with the juror or to require an explanation or solicit the reasons or motives for the change of position.

In his argument to the Court on the motion for new trial in support of his claim that the Court's inquiry from the dissenting juror would have revealed that the second unanimous verdict for the defendants was obtained through coercive influences practiced by the foreman upon said juror, the plaintiff made an offer of proof to the effect that the dissenting juror, if she were permitted, would testify "to the fact that her change of mind on the second polling was due to *possible* threat and fear, in that she was advised by the foreman of the jury, * * *, that they would sit there in the jury room for a long period of time, after having thrown the papers which the Court had given to them on the table, and told them they would sit there until the Judge came out and bawled them out for not returning a verdict." [Emphasis supplied]. Plaintiff further asserted in his statement of points on appeal that it was error for the trial judge to discuss the situation informally with the foreman of the jury without making inquiry of the dissenting juror herself.

■ Initially let us say that there was no impropriety, let alone error, for the trial judge in his supervisory duties over the trial including the deliberations of the jury and the return of their verdict, privately to interrogate the foreman of the jury for information concerning the charge of misconduct made against him. Eichel v. Payeur, 1965, 106 N.H. 484, 214·A.2d 116.

■ But the reluctant juror's statement that she agreed to the verdict through fear and coercion and that the announced unanimous verdict was not her free and deliberate act cannot serve as proper basis for an offer of proof in support of a motion for a new trial.

■ It is the general rule since Lord Mansfield's time that the testimony of a juror is not available to impeach a verdict in which he participated. Vaise v. Delaval, 1785, 1 D. & E. 11; 8 Wigmore, Evidence, § 2353, pp. 682 et seq.; See, note appended to Little v. Larrabee, 1822, 2 Me. 37, at page 41.

■ It is universally agreed that a verdict will not be set aside on the circumstance that a juror assented to it because of weariness or importunities; plaintiff's complaint really amounts to no more. Wigmore on Evidence, VIII, § 2349, p. 681.

■ It has been the settled doctrine in this State that affidavits or testimony of jurors will not be received to show any impropriety in the conduct of the jury in the jury room, or an improper mode of arriving at their verdict, but that external misconduct of individual jurors or the exertion of outside influence on the jury in the course of its deliberations may be shown through the evidence of jurors. Thus declarations of a juror to the others discrediting a material witness in the course of deliberations cannot be assigned as cause for a new trial. Purinton v. Humphreys, 1830, 6 Me. 379. Misapprehension of some on the jury panel regarding testimony may not be shown by affidavits of jurors. Bishop v. Williamson, 1831, 8 Me. 162.

The mode of computation in reaching a verdict may not be proven by jurors themselves. Hovey v. Luce, 1850, 31 Me. 346. Inability of a juror, by reason of a severe headache, fully to understand the evidence may not be received as evidence in support of a motion to set aside the verdict. Greeley v. Mansur, 1874, 64 Me. 211. Evidence of what is said by jurors while deliberating upon a case will not be considered by the court to set aside the verdict. Trafton v. Pitts, 1882, 73 Me. 408. Neither the testimony of jurors, nor their declarations out of court after the verdict concerning communications during deliberations by two of the jurors to their fellows of facts known by them which influenced their action, are competent evidence to prove such irregularity. Shepherd v. Inhabitants of Camden, 1890, 82 Me. 535, 20 A. 91.

But a juryman may testify to any facts bearing upon the question of the existence of an outside influence upon the jury, such as the introduction into the jury room by a juror of a pamphlet containing the evidence given at a former trial, Heffron v. Gallupe, 1868, 55 Me. 563; an independent probe by a juror of a defective road condition, Bowler v. Inhabitants of Washington, 1873, 62 Me. 302; a personal examination by a juror of a party's wool shop in relation to its location as to a stream and the possible pollution of the waters thereof, Winslow v. Morrill, 1878, 68 Me. 362; the secret investigation by a juror culminating in a private view of a cow and calf for purposes of comparison, Driscoll v. Gatcomb, 1914, 112 Me. 289, 92 A. 39, L.R.A.1915B, 702; the use in the jury room of a book on principles of real estate appraising brought in by a juror, Simmons v. State, 1966, Me., 222 A.2d 366.

Although the Mansfield rule, so-called, has been severely criticized, (see dissenting opinion in Sopp v. Smith, 1963, 59 Cal.2d 12, 27 Cal.Rptr. 593, 377 P.2d 649), sound considerations of public policy com-

pel us to continue our adherence to it subject to the exception which our Court has sanctioned allowing jurors to impeach their verdicts where an outside influence has factually or potentially contaminated the same.

In this, we are in accord with the great weight of authority in this country. McDonald v. Pless, 1915, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300; Shears v. Metropolitan Transit Authority, 1949, 324 Mass. 358, 86 N.E.2d 437; In re Peterson's Estate, 1961, 77 Nev. 87, 360 P.2d 259; Bellows Falls Village Corp. v. State Highway Board, 1963, 123 Vt. 408, 190 A.2d 695; Palumbo v. Garrott, 1963, 95 R.I. 496, 188 A.2d 371; Grenz v. Werre, 1964, N.D., 129 N.W.2d 681; Exeter-Hampton Mobile Home Village, Inc. v. State, 1965, 106 N.H. 476, 213 A.2d 925; Weber v. Stokely-Van Camp, Inc., 1966, 274 Minn. 482, 144 N.W.2d 540.

The underlying considerations of public policy which have moved the courts to frown upon any practice that would allow jurors to impeach their verdict by affidavits or testimony concerning what transpired during their deliberations and to protect the privacy of the jury room are varied: (1) the need for stability of verdicts; (2) the need to conclude litigation and desire to prevent any prolongation thereof; (3) the need to protect jurors in their communications to fellow jurors made in the confidence of secrecy of the jury room; (4) the need to save jurors harmless from tampering and harassment by disappointed litigants; (5) the need to foreclose jurors from abetting the setting aside of verdicts to which they may have agreed reluctantly in the first place or about which they may in the light of subsequent developments have doubts or a change of attitude.

"A different rule, one permitting jurors to impugn the verdicts which they have returned by asserting matters derogatory to the mental processes, motivations and purposes of other jurors or purporting to explain how and why a juror voted as he did in arriving at his verdict, would inevitably open nearly all verdicts to attack by the losing party and thwart the courts in achieving a long held and cherished ambition, the rendering of final and definitive judgments." Cox v. Charles Wright Academy, Inc., 1967, 70 Wash.2d 173, 422 P.2d 515.

"The inviolability of the jury room from outside influence of any sort, actual or potential, is a prime necessity in the administration of justice. That unqualified rule * * * requires that jurors are not to be harassed in any manner because of a verdict they have rendered. If jurors are conscious that they will be subjected to interrogation or searching hostile inquiry as to what occurred in the jury room and why, they are almost inescapably influenced to some extent by that anticipated annoyance. The courts will not permit that potential influence to invade the jury room. He who makes studied inquiries of jurors as to what occurred there acts at his peril, lest he be held as acting in obstruction of the administration of justice. Much of such conversation and inquiry may be idle curiosity, and harmless, but a searching or pointed examination of jurors in behalf of a party to a trial is to be emphatically condemned. It is incumbent upon the courts to protect jurors from it." Rakes v. United States, 1948, C.C.A. 4th Cir., 169 F.2d 739, at pages 745–746, cert. den. 335 U.S. 826, 69 S.Ct. 51, 93 L.Ed. 380.

In the instant case, the dissenting juror on the second polling agreed with the other eleven jurors to return a verdict for the defendants. She failed to disclose to the presiding justice at that time the alleged coercion which importunity of counsel has flushed out belatedly. Her ill-considered statements were not volunteered but were made to defeated counsel upon his abusive invasion of her privileged status as a juror and undoubtedly given under the mistaken idea that she owed him a duty of explana-

tion. Such conduct by counsel is a serious impediment to the administration of justice, causes jurors great embarrassment and harassment, has the natural tendency to prevent the free expresssion of thoughts amongst jurymen in their deliberations and is an effective deterrent to a willing acceptance of jury service.

In Greeley v. Mansur, supra, our Court has said that "[I]t is therefore useless for parties or their counsel, to interrogate jurors with respect to their verdicts, in the hope thereby to obtain evidence on which to ground a motion for a new trial. Such efforts will not avail." This statement was repeated in Trafton v. Pitts, supra.

We now condemn the practice, not only as a useless gesture, but as undesirable and highly unethical and improper. Jurors must receive court protection against private investigations by defeated counsel unless the purpose thereof be to establish proof of external misconduct of individual jurors or of the existence of an outside influence which our Court has recognized as an exception to the rule of exclusion. Weber v. Stokely-Van Camp, Inc., supra; Rakes v. United States, supra; Commonwealth v. Kravitz, 1960, 400 Pa. 198, 161 A.2d 861.

Having taken plaintiff's counsel to task for his overactivity in launching an improper investigation of jury room deliberations under a misconceived sense of duty to a defeated client, we equally deplore the failure of counsel for the defendants to assist the Court with written brief as intended by our rules.

Nevertheless, the entry must be

Appeal denied without costs.

WEBBER, J., did not sit.