JOHN E. BYER, PLAINTIFF-APPELLEE, v. H. R. RITTER TRUCKING CO., A CORPORATION, DEFENDANT-APPELLANT.

Submitted October 29, 1943—Decided January 27, 1944.

For the defendant-appellant, *Starr, Summerill & Lloyd* (*Alfred E. Driscoll,* of counsel).

For the plaintiff-appellee, *Horace G. Brown.*

The opinion of the court was delivered by

THOMPSON, J. This is an appeal from a judgment entered in the New Jersey Supreme Court upon a jury verdict in favor of the plaintiff-appellee in an action for personal injuries alleged to have been caused by the negligent operation of a truck owned by the appellant.

Appellant grounds its appeal upon the trial judge's denial of its motions for a nonsuit and for a directed verdict. The motions were based on defendant's contention (a) that the plaintiff failed to prove any actionable negligence on defendant's part, and (b) that plaintiff's own negligence proximately contributed to his injuries, thereby barring as a mat-

ter of law his right to recovery. These are the only issues involved in the present appeal.

The appellant was engaged in the business of hauling oil and petroleum products, and in such transportation . it was accustomed to crossing the Delaware River bridge. The appellee was employed on the bridge at the toll collector's station alongside of the so-called twelfth or outside lane approaching the City of Camden. His duty required him to . reach out and collect the toll tickets from the drivers of passing vehicles at this point. He was engaged in such duty on the day of the accident in question, when one of the appellant's trucks approached the toll booth and stopped for the purpose of the toll ticket transaction. His contention is, generally speaking, that while engaged in taking the required ticket from the driver of the truck on this occasion, and before completing the act of regaining his position on the platform, from which he had to reach toward the driver, which reaching occasioned a certain amount of leaning in the direction of the driver because of the fact that the latter was in a location behind the wheel on the left side of the cab of the vehicle, the driver started the truck with a jerk, causing it to strike the plaintiff before he could .resume his upright position on the toll platform, which is a narrow concrete space at a level of about eight inches above the roadway, the collision of the truck with the body of the plaintiff precipitating him to the roadway and causing his injuries. .

The plaintiff himself was the only witness who testified as to what actually happened that caused him to be injured. Two other toll collectors saw him in the roadway and picked him up a little distance beyond his toll booth station after the truck had driven off. They did not see the accident. It is said that no driver of any of appellant's trucks knew of or reported any accident, so that there was no testimony from that . quarter as to what happened. Plaintiff's own story, therefore, is the only direct evidence of the circumstances of his injury. He testified that he "leaned on the cab and reached over to get the two tickets the driver had and. just as I had them in my hand, something pinned me or jerked away from me and pinned me and I whirled around, struck

the building, struck the tractor again, threw me forward, and I slipped there and fell off the curb, and the wheels caught my hips." "I mean the truck gave away from me, went away from me suddenly." "I fell right down off the curb, against the wheels." "All I can remember, I tried to get out of the way of the rest what was coming, tried to pull myself up off the roadway and get on the platform." He further testified as follows:

"Q. Mr. Lloyd said to you that you collected the toll and then you slipped and that's all you know. What made you slip?

A. The truck hit me.

Q. When you say it hit you, what do you mean?

A. It banged me in the side of the hip here and it whirled me. Just as the driver pulled away, he jerked away, something struck me. I don't know whatever hit me but it whirled me.

Q. When the truck hit you and jerked was it a usual jerk or an unusual jerk that trucks start with?

A. No, it was an unusual one.

Q. What actually caused you to slip as you said and fall, you don't know, do you?

A. I don't know."

On cross-examination the plaintiff further testified:

"Q. How are instructions given you as to your duties?

A. We learned that by ourselves when we went on the job.

Q. And where a driver is seated over on the left-hand side of the truck, how do you get the ticket?

A. By reaching up after it.

Q. And does he have to reach over and help you?

A. Oh, yes, he has to lean quite a ways over.

Q. And that is what happened the day you were hurt?

A. That's what happened.

Q. The driver leaned over and you reached up and took his ticket?

A. I reached up and got his ticket.

Q. And the minute you get your ticket you get back out of the way?

A. Get out of the way and check it up."

The witness, Ephraim Sharp, captain of the toll collectors on the bridge, stated, as to the method of the toll collector getting the fare or ticket, "You must step. That driver has to reach over, in order to get that, or you would have to get inside the vehicle or get up on top of it to get your ticket, and we don't want our men to do that. *Q.* That would be dangerous? *A.* Yes, sir."

We think the foregoing constitutes a fair recital of the pertinent testimony, and summary of the situation at the time of the accident, and that the facts and fair inferences therefrom created a question for the jury to decide, as to whether or not under all the circumstances the defendant's employee-driver was negligent to the extent of proximately causing plaintiff's injury. Here was a man stationed on a very narrow platform adjacent to the roadway on which motor vehicles passed the toll station on their way across the bridge. His duty was patently that of securing the tickets or cash for the toll charge from the passing vehicles, among which were types of vehicles like those owned by the defendant and operated by its employees. The practical requirements in connection with the payment and receipt of the toll fare as between the driver and the toll collector were manifestly that, the driver being on the left-hand of his vehicle, and the toll collector stationed at the right-hand, outside the vehicle, both would tend to reach toward each other in the act of passing and receiving the fare. That would seem to be the natural inclination of any two people joining their efforts in a common transaction of the character of that involved in this case. Furthermore, in this particular instance, there is testimony that the trailer attached to the cab where the driver sat extended in width beyond the width of the cab, so that there was a protrusion sideways of the rear part of the total vehicle beyond the structure of the cab itself, and toward the platform. This would mean two things: (1) that the cab structure would be somewhat farther away from the curb of the platform than the rear part, which was wider; (2) if the plaintiff, in order to reach toward the driver to take the ticket, had this extra space to cover, though it were of but inches, he might reasonably be expected to support himself

momentarily with one hand or arm against the cab structure while with his other hand and arm he reached for and took the tickets from the driver's hands. He was reaching out beyond a narrow platform that had an eight-inch elevation above the level of the road. In such a posture it is not speculation or conjecture, but a fair question for a jury to decide whether the driver was not guilty of negligence if in the situation described (if the jury believed it to be as described) the driver failed to avoid starting his car before the handing of the fare tickets from him to the collector had been entirely completed and the collector given time to readjust his position with reference to the car and the platform, so that the moving up of the rear portion on a too-hasty forward movement, or any movement at all, would not cause the rear of the vehicle to strike the plaintiff, as it is said happened in this case. It is true that there is testimony of the witness Sharp, captain of the toll collectors upon the bridge, that the driver has to reach over or the collector would otherwise have to get inside the vehicle or "get up on top of it" to get his ticket, and that they didn't want their men to do that, for that would be dangerous. But he also used the phrase, "you must step," which manifestly means the collector also has to exert himself somewhat toward the driver to do his part in the exchange. The collector had to meet such situations in a practical way in order to perform his duty, as the situations created themselves in the coming and going of the vehicles and traffic; he had to accommodate himself to the doing of his job, and it does not appear that what the plaintiff did in this case was not the reasonably prudent thing to do under all the circumstances. He certainly had the right to believe that the driver would abstain from operating his vehicle in any way that would imperil the safety of the plaintiff while he was performing an act of which the driver was manifestly aware, or of which he should have been aware in the exercise of reasonable care, because he was himself a participant in the mutual activity. What happened to the plaintiff, and the manner in which it happened, and what occurred incident to it generates a fair inference that while the plaintiff was taking the reasonably natural course to perform a given act

in the course of a duty, his completion of the act was interrupted by the premature movement of the vehicle in question, causing him to lose control of his bodily equilibrium and suffer the consequent injury thereby. Certainly this was at least a question for the jury as to whether the driver had acted with reasonable care on his part and also, of course, as to whether contributory negligence on the part of the plaintiff had been sufficiently proved to be a bar to his recovery even though the driver were found to have been negligent on his part. As to contributory negligence, the defendant argues that such negligence was disclosed and proved by the plaintiff's own case as to his actions under all the circumstances. We do not discern that it was proved, if at all, to a sufficient extent to be regarded as dispositive of the case as a matter of law. It was at least a question for a jury to resolve. Contributory negligence is a matter of defense, and the burden of proof to establish it is on the defendant, and he must establish it by a fair preponderance of evidence. It is not necessary for the plaintiff to prove that he was free from contributory negligence. Whatever may be thought about it, it was not established to the extent that the court might properly dispose of the matter on motions for nonsuit or directed verdict. It was the jury's province to take that question under deliberation and decide it under the evidence.

The judgment is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, DILL, JJ. 15.

*For reversal*—None.