38 N.J. Super. 365 (1955)
118 A.2d 838
ADDISON DAVIDSON, ET AL., PLAINTIFFS-RESPONDENTS,
v.
MICHAEL FORNICOLA, T/A PARAMOUNT CAB COMPANY, AND FRANK TORREY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 14, 1955.
Decided December 6, 1955.
*368 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Robert V. Carton argued the cause for appellants (Messrs. Durand, Ivins & Carton, attorneys).
Mr. Theodore J. Labrecque argued the cause for respondents (Messrs. Parsons, Labrecque, Canzona & Combs, attorneys).
The opinion of the court was delivered by JAYNE, J.A.D.
This appeal impugns a judgment entered on April 29, 1955 against the defendants awarding to the plaintiff Addison Davidson compensatory damages in the sum of $12,000 for the injuries and losses he sustained in the occurrence of the collision of automobiles on the evening of December 29, 1953 at the intersection of Broad and Main Streets in the Borough of Eatontown. The plaintiff was operating a motor vehicle easterly on Broad Street and the defendant Frank Torrey was driving a taxicab owned by the defendant Michael Fornicola, trading as Paramount Cab Company, in a southerly direction on Main Street.
The transcription of the testimony introduced at the trial has been extensively abridged in the appendix to supply only the basis for the presentation of the two alleged trial errors specified by the appellants. A premise disclosed by the appendix is that both the answer of the defendants and the pretrial order defensively projected the averred contributory negligence of the plaintiff Addison Davidson.
*369 To sustain the first ground of appeal our attention is attracted to certain passages in the instructions delivered by the trial judge to the jury. We shall, however, with italics supplied, quote all of the excerpts of significant pertinency.
"* * * In order to entitle the plaintiff to recover damages he must show by a fair preponderance of the credible evidence that the defendants were negligent and that that negligence was the proximate cause of the accident.

* * * * * * * *
* * * It is incumbent upon the plaintiff to show by the greater weight that he is entitled to recover before he can recover, and therefore, the law imposes upon him that duty of proving to you by a greater weight of the believable evidence that Torrey was negligent in the operation of his car on the evening of December 29, 1953.
* * * I think that if I were you and in order to assist you I would say that when I got to the jury room to consider this case I would ask myself this question: has the plaintiff shown by that greater weight, by that preponderance of the credible evidence that the defendant Torrey did something that a reasonable and prudent person in similar circumstances would not have done or did the defendant fail to do something that a reasonable and prudent person in similar circumstances would have done? * * *
* * * It is for you to determine whether or not Torrey was negligent. They are Davidson's contentions and Davidson also says that the failure to do the things that a reasonable and prudent person would have done had he been in Torrey's place at that time, constitutes negligence on Torrey's part. Has Davidson satisfied you by a preponderance or the greater weight of the evidence that that is so? * * *"
The defendants' recorded objection at the trial and emphasized in this appeal relates particularly to the following portion of the court's charge:
"With relation to an affirmative defense the burden of proof never shifts; in other words, it is incumbent upon the plaintiff throughout the case to prove by a clear preponderance of the credible evidence those things which he must prove, but the burden of proceeding in the case of an affirmative defense does shift to the defendant, the person who urges that affirmative defense. So, I say to you that should you decide that the prima facie case of Davidson has been established and you go on to the defense, then, it is incumbent upon the defendant to prove by a clear preponderance and the same preponderance that the plaintiff was obliged to prove in the first *370 place by the credible evidence, that the plaintiff was contributorily negligent.
In general, a person is charged with the same duty of care for his own protection that is required for the protection of others, and this required the plaintiff, Davidson, at the time and place in question, to exercise that degree of care that a reasonable and prudent person would exercise under the same and similar circumstances, and, so, you may well ask yourselves in considering the affirmative defense of contributory negligence, have the defendants shown by a preponderance of the evidence that Davidson, the plaintiff, did something that a reasonable and prudent person would not have done or failed to do something that a reasonable and prudent person would have done under similar circumstances? If your answer to that is yes, then, that is the end of the case and the plaintiff cannot recover, and just as there are no degrees of negligence in the first place, there are no degrees of contributory negligence, and, so, any contributory negligence, however slight, is sufficient to bar the plaintiff from recovery."
It is noticeable that the trial judge utilized in his instructions a variety of stylistic phrases or expressions such as "the greater weight," "the preponderance," "the fair preponderance," and "the clear preponderance" of the credible evidence.
Counsel for the defendants insists that the linguistic use of the expression "clear preponderance of the credible evidence" as a requisite in establishing the contributory negligence of a plaintiff in an action at law transcends in possible prejudicial importance a mere harmless exercise in semantics.
The rule generally enunciated in our adjudications is that where the charge of the court, taken in its entirety, presents the law fairly and clearly, so that the jury cannot be reasonably thought to have been misled by the instructions, there is no ground for reversing the judgment, though some of the expressions, when standing alone, might be regarded as erroneous. Redhing v. Central R. Co., 68 N.J.L. 641 (E. & A. 1903); Merklinger v. Lambert, 76 N.J.L. 806 (E. & A. 1908); State v. Timmerari, 96 N.J.L. 442 (E. & A. 1921); J.D. Loizeaux Lumber Co. v. O'Reilly, 104 N.J.L. 510 (E. & A. 1928); Larsen v. Raritan Valley Farms, Inc., 109 N.J.L. 363 (E. & A. 1932); Johnson v. Central Railroad Co., 111 N.J.L. 93 (E. & A. 1933); Simons v. Lee, 117 N.J.L. 370 (E. & A. 1937); Vadurro *371 v. Yellow Cab Co. of Camden, 6 N.J. 102 (1950); Guzzi v. Jersey Central Power & Light Co., 12 N.J. 251 (1953); Ristan v. Frantzen, 14 N.J. 455 (1954).
Admittedly it is an equally well established rule that where two distinct propositions of law are charged, one of which is correct and the other erroneous, and neither of which is expressly withdrawn so that the jury cannot decide which is right, there is consequently reversible error in the record. State v. Tapack, 78 N.J.L. 208 (Sup. Ct. 1909); Collins v. Central R. Co. of N.J., 90 N.J.L. 593 (E. & A. 1917); Brown v. Public Service Ry. Co., 98 N.J.L. 747 (E. & A. 1923); Pucci v. Weinstein, 8 N.J. Super. 247 (App. Div. 1950).
And so it has been said that "the ultimate test of the soundness of instructions is, not what the ingenuity of counsel can, at leisure, work out the instructions to mean, but how and in what sense, under the evidence before them, and the circumstances of the trial, would ordinary men and jurors understand the instructions as a whole." Kargman v. Carlo, 85 N.J.L. 632 (E. & A. 1914). Cf. Middleton v. Public Service Co-ordinated Transport, 131 N.J.L. 322 (E. & A. 1944).
Assuredly in the law contributory negligence is established by the preponderance, that is, by the superiority in credibility and truth of the evidence adduced to prove it over that in refutation and contradiction of its presence. In exacting proof by the preponderance or greater weight of the evidence, the law does not prescribe the necessary quantum of the overweight or the degree of excess of its superiority in credibility. A preponderance is attained where the evidence in its quality of credibility destroys and overbalances the equilibrium. Thus we deem it to be imprudent and unwise for trial judges in their instructions to the jury to attach to the conventionally adopted and familiar phrases some qualitative or quantitative adjective such as "clear," "plain," "full," "distinct" to the noun "preponderance" in the endeavor to define or denote the requisite range of the preponderancy. The judicial usage of such syntactical *372 phrases ignites unnecessary controversy. See 7 Words and Phrases, Clear, p. 617 et seq.; p. 657 et seq.; 16 Words and Phrases, Fair Preponderance of Evidence, p. 87 et seq.
We are not unaware that the turn of expression "fair preponderance of the evidence" has entered our procedural jurisprudence. Vide, Barbero v. Pellegrino, 108 N.J.L. 156, 158 (E. & A. 1931); Byer v. H.R. Ritter Trucking Co., 131 N.J.L. 199, 209 (E. & A. 1944). But where so applied by the courts of our State, the adjective "fair" undoubtedly was intended to mean a preponderance of the evidence and not to be indicative of a measurement of the extent of the preponderance.
"Although there is authority to the contrary, it has been held that proof, to constitute a preponderance, need not be of such degree as to produce `conviction'; and a higher degree of proof than the law requires is that which produces `an abiding conviction,' a `clear conviction,' or `absolute belief,' or which `convinces,' or `clearly,' `fully,' or `clearly and satisfactorily' convinces, the mind. So, also, more evidence than the preponderance rule demands is required by such expressions as `abundant,' `clear,' `clear and affirmative,' `clear and conclusive,' `clear and satisfactory,' or `irresistible' proof, or a `great weight of testimony.' Similarly, the weight of authority, although there is some authority to the contrary, is that more evidence than the preponderance rule demands is required by the expression `clear preponderance'; and the same view has been taken of the expression `full preponderance.'" 32 C.J.S., Evidence, § 1021, p. 1052, et seq.
We disapprove the usage of the phrase "clear preponderance" as descriptive of the burden of proving contributory negligence in an action of this nature, not only because it is likely to transport to the jury the idea that something more than a mere preponderance is requisite, but also because in its signification relative to burdens of proof of the essential elements of some other and different causes of action it is likely to collide with the purposeful and distinguishable requirement and standard of "clear and satisfactory," and "clear and convincing" proof. Illustrative of the latter class are, for examples, cases in which it is sought to establish fraud, a parol trust, reformation, cancellation or rescission *373 of a written instrument, forfeiture, the contradiction of an attestation clause of a will, et cetera. And then we employ the phrase "clearly and conclusively" in determining the state of the evidence that will justify a dismissal of an action by the court on the ground of contributory negligence. Vide, Mellon v. Pennsylvania-Reading Seashore Lines, 7 N.J. 415, 422 (1951).
Unless the gradational shades of requisite proof are kept recognizably distinct in descriptive expression they will become meaningless in their pragmatical application. Our present duty particularly bids us to determine what notably disserviceable and delusive impression, if any, consciously entered the minds of the jurors by reason of the ill-use of the expression "clear preponderance" in the circumstances of the present case.
It seems apparent that in the charge delivered to the jury the judge synonymized the phrases "greater weight," "fair preponderance," and "clear preponderance" in denoting the burdens of proof resting alike and indiscriminately upon the plaintiff to sustain the negligence of the driver of the taxicab and upon the defendants to establish the contributory negligence of the plaintiff.
In the abstract we would not ordinarily determine that a manifestly and potentially erroneous instruction to the jury was inconsequential because its application was evenly balanced between the plaintiff and defendant, but the composition of the present charge viewed in its entirety is sufficiently exceptional to induce us to consider the sense, significance, and import which the lay minds comprising the jury in reasonable probability ascribed to it. Guzzi v. Jersey Central Power & Light Co., supra.
Indeed, such learned men in the law as the members of the Supreme Court of Mississippi thought that the clear preponderance of the evidence meant simply a preponderance. City Sales Agency, Inc., v. Smith, 126 Miss. 202, 88 So. 625 (1921).
Incidentally, it may also be stated that the incomplete transcript of the evidence does not reveal that the alleged *374 contributory negligence of the plaintiff was such an acutely controversial issue at the trial that the objectionable phrase of the charge constituted a probable determinative influence upon the jury.
Upon mature consideration of all of the circumstances of the present case, we are not persuaded that the jury was prejudicially misguided by the charge and that the inclusion therein of the phrase here disapproved deprived the defendants of substantial justice. R.R. 1:5-3(b); R.R. 2:5.
The defendants' second and remaining suggestion of harmful error implicates another portion of the court's charge to the jury. The argumentative point has the following background. The evidence including a photographic exhibit descriptive of the scene of the collision portrayed Broad Street on which the plaintiff was proceeding as a so-called "through street" and Main Street at that junction to be a "stop street." A sign having all of the characteristics of size, shape, colors, location, and wording of the commonly observed street and highway "stop sign" had been previously and was at the time of the mishap conspicuously stationed near the northwest corner of the intersection of those streets. The defendant Torrey, the driver of the taxicab, testified that he had "driven over" Main Street "hundreds of times" and knew "it was a stop street." He acknowledged that on this occasion before entering upon Broad Street, so designated as a through street, he did not first bring his vehicle to a complete stop. When interrogated to elicit the reason for his failure to stop, he replied, "That's a hard one to answer. I don't know."
Obviously, in consequence of that confessional divulgement by the defendant Torrey and the testimony of police officer Poer, the trial judge deemed it to be in point to allude in his charge to the germane terms of R.S. 39:4-144, to wit:
"No driver of a vehicle * * * shall enter upon or cross a through street so designated and marked unless he has first brought his vehicle * * * to a complete stop at a point within five feet of the nearest crosswalk or stop line marked upon the pavement at the nearest side of the through street, * * *."
*375 The trial judge added:
"The testimony is that there is a stop street sign confronting traffic on Main Street entering Broad Street, and from the fact that the stop street sign is there you may infer that Broad Street is a through street and that this statute required the defendant Torrey, in the operation of his car, to come to a complete stop at a point within five feet of the crosswalk marked upon the pavement at the nearest side of the through street."
After reading some other statutory regulations from Title 39 of the Revised Statutes which are not here of relevancy, he declared:
"Now, these sections of the statute which I have read to you are part of the traffic act of the State of New Jersey, and the violation of a statutory duty as laid down in the traffic act, by the defendant, does not of and in itself constitute negligence; neither does it of and in itself constitute contributory negligence on the part of the plaintiff, but it is a factor which you may consider and take into consideration together with all of the other facts and circumstances in the case in determining whether the defendant was negligent or whether the plaintiff was contributorily negligent, if either of them violated any of the provisions of the traffic act."
We do not detect any fallacy in the purport of those deliverances, nor does counsel for the appellants, but the criticism is that there was no proof whatever that the stop sign had been placed at its location by a governmental agency or body pursuant to statutory authorization; hence the reference by the court to the existence of the sign and to the terms of the statute requiring recognition of it by the defendant Torrey was prejudicially erroneous.
This is not a new-born subject of debate. The same and analogous propositions have engaged the attention of our courts since the advent of official motor vehicle traffic signal devices on the public streets and highways throughout the nation. We shall endeavor to settle the question in this jurisdiction.
True, in our statutory law the designation "official traffic control devices" means those signs, signals, markings and devices placed or erected by the authority of a public body *376 or official having such jurisdiction, for the purpose of regulating, warning or guiding traffic. R.S. 39:1-1. The power to designate "through streets" and mark the entrances thereto by "stop signs" is also conferred upon the local municipal authorities by R.S. 39:4-140; R.S. 39:4-197. Traffic signs shall be placed only by the authority of a public body or official having jurisdiction as authorized by law, says R.S. 39:4-183.1. Imitations are deemed to be public and private nuisances, R.S. 39:4-183.4. The shape and color of the several official movement, parking, warning and guide signs are prescribed. R.S. 39:4-183.7.
It is observable that the same or similar legislative declarations are mentioned in the pertinent decisions of the courts of other states. We shall specifically mention some of such decisions. They are in concord with the view we adopt.
For examples, we notice that the courts of our neighboring state of New York have answered the inquiry. In Meadows v. Lewis, 235 App. Div. 243, 257 N.Y.S. 137, 138 (App. Div. 1932), the plaintiff, who was injured in a collision of two automobiles, charged that the defendant failed to obey a stop sign. The defendant challenged the legality of the sign and requested the trial judge to charge the jury: "`There is no evidence of any lawful traffic regulations * * * because there is no proof that there was anything displayed within any provision of law.'" The court held:
"The testimony shows that the sign in question had the appearance of the usual lawfully erected and maintained traffic signal and was erected at a place in respect to the intersection where a lawful sign would be customarily placed. * * * We think this testimony was a sufficient showing of the validity and authority of the sign, its construction and location under the statute. Such testimony forms an adequate basis for the presumption that the sign was suitably constructed, erected, and maintained, and for the further presumption that it was not constructed, erected, and maintained in violation of the provisions of the Vehicle and Traffic Law, § 88, subd. 9, above quoted. * * *
* * * In this view plaintiff made a prima facie showing of a lawful traffic regulation displayed in the highway (Vehicle and Traffic Law, § 88, subd. 6, as amended by Laws 1930, c. 756, § 3), and it then became incumbent upon defendant to present facts to the contrary if it would have the question submitted to the jury."
*377 In Bailey v. Herrmann, 253 App. Div. 125, 1 N.Y.S.2d 404, 405 (App. Div. 1937), the court's charge relative to the "stop sign" was deemed justified because of the presumption that it was lawfully erected and maintained.
In City of Rochester v. Tutty, 169 Misc. 358, 6 N.Y.S.2d 975, 976 (City Ct. 1938), the court applied the same presumption to parking signs.
The court held in Armstrong v. Koller, 261 App. Div. 1017, 25 N.Y.S.2d 984, 986 (App. Div. 1941), that the evidence of the appearance and location of the stop sign created the presumption that it was lawfully there. Cf. Epolito v. Epolito, 189 Misc. 424, 71 N.Y.S.2d 611, 613 (Sup. Ct. 1947).
Brief references may be made to the pertinent adjudications in some other states. The following quotation is extracted from the decision in Trimble v. Bridges, 27 Tenn. App. 320, 180 S.W.2d 590, 591 (Ct. App. 1943):
"It seems to be the plaintiff's contention that because the city had not by ordinance expressly provided that a `stop-sign' should be placed at the intersection of Poplar and McComb Streets, he was not required to obey the one that was there. This position is untenable. Code, Section 2689, provides in substance that the state authorities, with reference to state highways, and local authorities with reference to highways under their jurisdiction, are authorized to designate main traveled or through highways by erecting at the entrances thereto from intersecting highways, signs notifying drivers of vehicles to come to a full stop before entering or crossing such a designated highway; and that whenever such signs have been so erected, it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto.
There is no direct evidence in the record as to just who placed the sign at the point mentioned, but it was shown that it had been there for at least four years, and in the absence of any evidence to the contrary it must be presumed that it was placed there by competent officials in the exercise of the authority conferred by Code, section 2689."
It was stated in Kingston v. Hardt, 18 Cal. App.2d 61, 62 P.2d 1376, at page 1377 (D. Ct. App. 1937):
"Nothing to the contrary appearing, it must be assumed that the safety island and the safety zone were legally constructed under a legal authority conferred upon the board of works and its agents."
*378 An excerpt from the opinion in King v. Gold, 224 Iowa 890, 276 N.W. 774, 776 (Sup. Ct. 1937), meets our attention:
"There is an intimation in plaintiff's argument that there is no proof that the stop sign was placed there by proper authority. There is no merit in this contention for the reason that a traveler must have the right to assume that highway signs having the appearance of regularity are placed by proper authority."
After a comprehensive study of the reported cases, the Supreme Court of Oregon in an analogous factual setting concluded in Schoenborn v. Broderick, 202 Or. 634, 277 P.2d 787, 797 (1954):
"We are satisfied that the plaintiff was favored with a presumption that the traffic control device with which this case is concerned was a lawful one, lawfully installed and maintained. There is nothing in the record indicating that the device was unlawfully erected."
Nor is the pragmatical point of view to be ignored, for as well stated in Comfort v. Penner, 166 Wash. 177, 6 P.2d 604, 606 (Sup. Ct. 1932):
"Travelers upon public highways are not expected to first ascertain and determine whether such signs are established in strict compliance with law before respecting them."
Motorists may reasonably expect that a stop sign will be respected, otherwise it will "become a trap to innocent persons who rely upon it." Clinkscales v. Carver, 22 Cal.2d 72, 136 P.2d 777, 778, 779 (Sup. Ct. 1943).
Official traffic signs, signals and markings are now objects of general knowledge and of common observation. The rational essence of a presumption is the reasonable probability of the identity and authenticity of something deduced from its conformity or repugnancy to our general knowledge, common observation and experience. A presumption attains practical utility where the inference of the existence of one established fact rationally and logically in the light of common experiences in life warrants the belief of the existence of some other fact.
*379 We think it would be unnecessarily impracticable in the expeditious administration of justice in the numerous automobile accident cases of the present day to oblige a litigant who desires to invoke in the action an applicable provision of the motor vehicle and traffic laws of our State, to prove in the absence of a relative controversial issue generated by the pleadings or embraced by the pretrial order, such matters as that the highway was lawfully acquired by the public, or that the marking of the lanes on the pavement was done, or the overhead signal lights were actually suspended, or the safety isles were constructed by a lawfully authorized governmental agency, or that the uniformed officer directing traffic at the scene was in fact a properly admitted member of a police department within the import of the traffic act.
It is a primary purpose of the pretrial conference preliminarily to elicit the controversial issues to be litigated, particularly those which would not otherwise be reasonably anticipated.
We here express the conclusion that in civil actions such objects of the common and conventional size, shape and appearance as stop signs, traffic signals and devices, safety isles, and pavement markings as may be placed in or over and on the public streets and highways shall, in the absence of evidence which renders the presumption unavailable, be presumed to have been lawfully erected, placed and maintained. The presumption is, however, of a rebuttable nature.
We conceive this conclusion to be concordant with the weight of the recent judicial authorities. See, Annotation, 164 A.L.R. 213; 9B Blashfield, Cyc. of Auto Law 422, § 6041. We emphasize that our ruling is intended only to be applicable to the trial of civil actions. Cf. State v. Feldman, 30 N.J. Super. 600 (Cty. Ct. 1954). Certainly in the absence of evidence of the existence of the regulatory object at the scene at the time of the mishap, no such presumption is applicable. Cf. Craig v. Morgenweck, 15 N.J. Misc. 637 (Sup. Ct. 1937).
The judgment under review is affirmed.