100 N.J. Super. 199 (1968)
241 A.2d 478
MYRON C. WEINSTEIN, CITIZEN AND RESIDENT, STATE OF NEW JERSEY, PLAINTIFF,
v.
CITY OF NEWARK, A MUNICIPAL CORPORATION, STATE OF NEW JERSEY, DOMINICK SPINA, IN HIS CAPACITY AS DIRECTOR OF POLICE DEPARTMENT, CITY OF NEWARK, KENNETH MELCHIOR, IN HIS CAPACITY AS COMMANDANT OF BUREAU OF TRAFFIC AND SIGNALS, CITY OF NEWARK, EDWARD CYR, IN HIS CAPACITY AS TRAFFIC ENGINEER, CITY OF NEWARK, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 18, 1968.
*203 Mr. Myron C. Weinstein, appearing pro se.
Messrs. Harry Del Plato and Ronald H. Schachman for defendants (Mr. Norman N. Schiff, Corp. Counsel, attorney).
STAMLER (JOSEPH.) J.S.C.
Plaintiff who appears pro se and describes himself as "Myron C. Weinstein, Citizen and Resident, State of New Jersey" brings this action against defendants the City of Newark; Dominick Spina, Director of the Police Department; Kenneth Melchior, Commandant of Bureau of Traffic and Signals; and Edward Cyr, Traffic Engineer.
Plaintiff, a resident of the Township of Millburn and a licensed driver in this State, asserts in the first count that the defendants have erected, placed, maintained and enforced regulatory traffic signs throughout the City which do not conform to law. This attack is directed to parking prohibition, exclusion and restriction signs. Plaintiff contends that the signs are illegal because of color, shape, sharp corners and multiple messages per sign. The "sharp corner" argument was abandoned at trial.
On this count plaintiff demands judgment as follows:
(a) a declaration that the traffic signs so described are illegal and of no force or effect;
(b) a declaration that the enforcement of the signs is ultra vires;

(c) a mandatory injunction against the Commandant of the Bureau of Traffic and Signals ordering the removal forthwith of all such signs;
(d) a prohibitory injunction against the Director of the Newark Police Department restraining him and his department from enforcing the signs pending their removal;
(e) a mandatory injunction ordering the Commandant of the Bureau and the Traffic Engineer to install "valid signs in accordance with the directive of local and State law."
*204 The second count is limited to traffic control signals. Each and every traffic light in the City of Newark was erected and is maintained illegally, plaintiff contends. Then charging that "said illegal action has caused and will continue to cause plaintiff irreparable injury in that it represents an unlawful use of the police power by the City of Newark directly and indirectly obstructing plaintiff's common easement of travel and transport", he asks the court to declare each and every traffic control signal in the City of Newark without force and effect. A prohibitory injunction is sought forthwith against the enforcement of any traffic light violation anywhere in the City. At the trial plaintiff asserted and defendants agreed that after the complaint herein had been filed the City continued to install, erect and relocate traffic control signals following precisely the same procedure as it had theretofore.
Defendants assert that the traffic signs and signals were legally erected and enforced. But in bar at the outset defendants contend: plaintiff has no standing to sue; the Attorney General is an indispensable party; the statute of limitations has run. These defenses in bar are first considered for if tenable, it will not be necessary to proceed to the merits.

I. STANDING TO SUE
The Declaratory Judgment Act (N.J.S. 2A:16-53) provides:
"A person ... whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."
The Appellate Division said in Rego Industries, Inc. v. American Modern Metals Corp., 91 N.J. Super. 447 (App. Div. 1966):
*205 "The purpose of a declaratory judgment proceeding is to provide a means by which rights, obligations and status may be adjudicated in cases involving a controversy that has not yet reached the stage at which either party may seek a coercive remedy. Such proceeding is intended to serve as an instrument of preventive justice, to relieve litigants of the common law rule that no declaration of right may be judicially adjudged until that right has been violated, and to permit adjudication of rights or status without the necessity of a prior breach." (at p. 452)
In addition to the foregoing statement, R.R. 4:92A makes it very clear that "the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."
Plaintiff is a licensed driver subject to Newark's signs and signals. He contends that the City displays unauthorized signs and signals and that this is an unlawful restriction of his privilege to park and to traverse the streets.
That plaintiff seeks other and further relief beyond the simple declaration (i.e. injunction) does not preclude this court from exercising jurisdiction. N.J.S. 2A:16-60. Numerous cases in New Jersey direct that a liberal construction and administration be given to the Declaratory Judgment Act. Union County Board of Chosen Freeholders v. Union County Park Commission, 41 N.J. 333 (1964). One of the main purposes of the Declaratory Judgment Act is to definitively establish private rights, duties and obligations and thereby forestall a multiplicity of actions and, in addition thereto, avoid costly and burdensome separate trial proceedings. Hartford Accident and Indemnity Co. v. Selected Risks, Indemnity Co., 65 N.J. Super. 328 (App. Div. 1961). The defendants question whether plaintiff has a right and has standing to bring this action. If we were to refuse to hear this complaint, we would then impose upon the plaintiff the obligation of parking in a prohibited location, remaining too long in a limited parkng zone and running a red light in order to test the validity of Newark's traffic control devices. Although it has been held that one may not ward off a criminal prosecution by gambling on the *206 ultimate outcome of a suit for a declaratory judgment (see Lucky Calendar Co. v. Cohen, 19 N.J. 399 (1955)), a distinction can be drawn between the efforts of the retail merchant who sought to establish in advance that his contest was not a gambling vehicle and the driver on the highways of our State who may be subject to numerous parking fines or a temporary suspension of driving privileges for a moving violation. Under the liberal construction of the Declaratory Judgment Act plaintiff has standing to sue although there is another remedy available. But even if there can be no suit unless there is no other available remedy, the other remedy must be an "adequate remedy", and to require a citizen licensed to drive on the streets of our State to violate the law to test its validity is not an adequate remedy.
Plaintiff is entitled to relief from the uncertainty and insecurity as to the legal limitations and obligations which confront him each day on the streets of the City.

II. THE STATUTE OF LIMITATIONS
Defendants contend that plaintiff is barred for he did not promptly pursue his rights within 45 days after the passage of the ordinance authorizing the parking signs. Defendants rely on R.R. 4:88-15.
The right to question the activities of Newark in this case has been yet accrued. It will first truly accrue when plaintiff is arrested for running a red light or summoned for illegal parking. Defendants inconsistently contend that plaintiff's present action is premature and out of time. Neither position is tenable.
Defendants add laches, the equitable statute of limitations. They protest that plaintiff did not object to the traffic signs and signals which have been and continue to be erected in the City. Such defense cannot be used to give vitality to an ordinance which never came into legal being or to an act which may require an ordinance for it to be validly performed. *207 Catalano v. Pemberton Tp. Bd. of Adjustment, 60 N.J. Super. 82, 97 (App. Div. 1960).
Plaintiff as a licensed driver seeks to enforce a right to use and traverse the streets of a municipality without the imposition of allegedly illegal prohibitions or limitations. This is a continuing right and that right is not lost by a failure to seek judicial relief within a specified number of days after the posting of a sign or the erection of a traffic signal. Cf. Yanuzzi v. Mayor and Council of Borough of Spring Lake, 22 N.J. 567, 570 (1956).

III. THE ATTORNEY GENERAL AS AN INDISPENSABLE PARTY
The Attorney General had notice of this litigation, asked for time to consider intervention and determined not to do so.
There is no challenge directed here to the constitutionality of the Motor Vehicle and Traffic Regulation Act or to irregular activity by the Director of the Division of Motor Vehicles. If there were, R.R. 4:37-2 would require formal invitation or naming of the Attorney General. What is here in issue is a question of the alleged failure of the defendants to comply with State law.
It is concluded that the Attorney General's presence is not indispensable to a determination of the issues here raised.

IV. TRAFFIC SIGNS
The traffic signs questioned in the case sub judice are exclusively "parking" signs. These comprise exclusionary, prohibitive and restrictive type signs. The New Jersey Courts have shown awareness of the serious parking problems confronting urban municipalities. See DeLorenzo v. City of Hackensack, 9 N.J. 379, 384 (1952); Lenzner v. City of Trenton, 22 N.J. Super. 415, 422 (Law Div. 1952), affirmed, 29 N.J. Super. 514 (App. Div. 1954), affirmed 16 N.J. 465 (1954), certiorari denied 348 U.S. 972, 75 S.Ct. *208 534, 99 L.Ed. 757 (1955). In Board of Commissioners of City of Newark v. The Local Government Board, 133 N.J.L. 513 (Sup. Ct. 1945), the following appears:
"Parking in the public streets in its broader connotation is a privilege in derogation of the common easement of travel and transport, and the uses incident thereto not inconsistent with the correlative rights of other travelers, and the abutting owner's qualified additional right of ingress and egress; and its control is therefore intimately identified with traffic regulation in its larger aspect and thus related to the essential public welfare." (at p. 517)
In Davidson v. Fornicola, 38 N.J. Super. 365, 379 (App. Div. 1955), certification denied 20 N.J. 467 (1956), the court said that in civil actions such objects of common and conventional size, shape and appearance as stop signs, traffic signals and devices, safety isles, and pavement markings as may be placed in or over and on public streets and highways must be presumed to have been lawfully erected, placed and maintained, in the absence of evidence which would render such a presumption unavailable, but that such a presumption is rebuttable. Notwithstanding that in Davidson the court may have applied such a presumption only in a negligence case, plaintiff herein has raised sufficient evidence and argument to require careful scrutiny of whether the erection, placement and maintenance of the signs were and are lawful.
N.J.S.A. 39:4-198 in relevant part reads as follows:
"No ordinance, resolution or regulation enacted, passed, or adopted by local authorities nor any regulation adopted by the State Highway Commissioner under any power given by this chapter or any supplement thereto shall be effective unless due notice thereof is given to the public by placing a sign at the places where the ordinance, resolution or regulation is effective, and by briefing its provisions on signs according to specifications contained in this chapter or any supplement thereto. These signs shall be so placed as to be easily read by pedestrians or operators of vehicles."
N.J.S.A. 39:4-183.2 requires that all traffic signs conform "in all respects" to the provisions of the act.
In appropriate part N.J.S.A. 39:4-183.17 provides:
*209 "The design and location of other regulatory signs shall be as follows:
(a) Shape-Rectangular with longer dimension vertical.
(b) Colors-White background, black letters and border, except on prohibited parking signs which shall have white background, red letters and border, and limited parking signs which shall have white background, green letters and border.

* * * * * * * *
(d) Messages and dimensions-Standard regulatory signs shall have 1 of the messages in the following table, with minimum dimensions to conform to the specifications adopted by the Director of the Division of Motor Vehicles."
N.J.S.A. 39:4-183.7 in relevant part reads as follows:
"All traffic signs shall be of the shape and color indicated in the table below. All corners shall be rounded and all signs shall have a border.

 Type
 Regulatory Shape Background Message
 Movement
 * * * *
 Rectangle with
 Stopping and longer dimension White Red
 Standing vertical
 Rectangle with
 Parking longer dimension White Red
 Prohibition vertical
 Rectangle with
 Restriction longer dimension White Green"
 vertical

By way of illustration, plaintiff complains of six types of signs. They are as follows:

*210 The outer physical dimension of each of the metal signs is longer vertically than horizontally. In Figs. A, B, C and D the separate messages are longer in the horizontal.
Fig. A. may be described as follows: The upper part has red messages on a white background within a red border directing "NO PARKING 7-9:30 A.M."; "NO STOPPING OR STANDING 4-6 P.M."; and these messages are followed by "EXCEPT SATURDAYS & SUNDAYS." The lower portion is encompassed by a green border on a white background with the time limit on a green background containing a white time period "1 HOUR LIMIT" alongside the green lettered, white background message reading "METERED PARKING 9:30 A.M.-4 P.M. MONDAY TO FRIDAY; 7 A.M.-6 P.M. SATURDAYS ONLY".
Fig. B is similar to Fig. A in color and in the upper half contains: "NO PARKING THIS SIDE 7-9 A.M. EXCEPT SATURDAYS AND SUNDAYS" in red letters and on the lower half "2 HOUR LIMIT" with white lettering on a green background and "METERED PARKING 9 A.M. to 6 P.M. EXCEPT SUNDAYS" in green letters on a white background.
Fig. C is similar and as depicted above has the upper half of the message in red letters with a white background and the lower half in green letters on a white background except for the color inversion where the "1 HOUR LIMIT" appears.
Fig. D, with red letters on a white background, contains the following messages: "NO PARKING THIS SIDE ANY TIME; NO STOPPING OR STANDING 7-9:30 A.M., 4-6 P.M., EXCEPT SATURDAYS & SUNDAYS."
Fig. E reads as follows: "NO STOPPING, STANDING OR PARKING HERE TO CORNER ANY TIME." Here all letters and border are red on a white background.
Fig. F demonstrates color inversion, a green background with white letters "1 HOUR LIMIT".
Plaintiff contends invalidity of the illustrative signs as follows:
*211 1) Figs. A through D contain messages which have a longer horizontal rather than a longer vertical dimension;
2) Figs. A, B, C and F make use of a color inversion for the parking restrictions (the hour limitations have white letters on a green background rather than green letters on a white background);
3) Figs. A through E have multiple messages and N.J.S.A. 39:4-183.17 (d) permits but one.
In State v. Callaghan, 46 N.J. Super. 289 (Cty Ct. 1957), the word "shall" as used in this statute is held to be mandatory and municipalities are precluded from varying the standards and specifications for signs as set forth in the act. But there the applicable statutory requirements for one-way street signs were crystal clear and there was no doubt that the municipality violated the requirements for that particular sign.
The questions to be determined on this issue are:
1) In N.J.S.A. 39:4-183.7 and N.J.S.A. 39:4-183.17 (a), is it the message or the physical outside dimensions of the sign which must be rectangular with longer dimension vertical?
2) Do N.J.S.A. 39:4-183.7 and N.J.S.A. 39:4-183.17 (b) prohibit a partial color inversion for emphasis?
3) When N.J.S.A. 39:4-183.17 (d) speaks of "1 of the messages in the following table" did the Legislature intend "only 1" (as plaintiff contends) or "1 or more" (as defendants contend)?
Considered first is whether the dimensional provision applies to the message or to the sign. There is no precise statutory requirement for a certain size of lettering on a standard regulatory sign. There is an implied requirement that the letters be legible and that they be made larger, if need be, to achieve this result. The second sentence of N.J.S.A. 39:4-183.9 reads:
"Where conditions require greater visibility necessitating a larger sign, standard shapes and colors shall be used, and standard proportions shall be retained, so far as practicable." *212 Subsection (d) of N.J.S.A. 39:4-183.17 speaks of "minimum dimensions".
The illustrative signs (Figs. A-F) are almost the same in outer perimeter notwithstanding that one may look larger or smaller in the photographs marked in evidence. The amateur photography of the pro se plaintiff is unintentionally misleading.
If we assume arguendo that more than one message may be on a sign (as we must do for the dimensional issue to arise at all with respect to the signs and messages for which it is raised) and that each message must be rectangular with the longer dimension vertical (such as in Fig. E), then we must project a sign twice as long vertically for a two message sign and three times as long vertically for a three message sign. The bottoms of such signs are required to be not less than 5 feet and not more than 7 feet above the crown of the pavement, except where parked vehicles may obstruct the required visibility. In such case the bottom of the signs shall not be less than 7 feet and not more than 9 feet above the pavement (N.J.S.A. 39:4-183.14). The increase in height above the pavement of the highest message may from common experience remove it from the ordinary field of vertical vision of the driver of a moving vehicle and as such this would violate N.J.S.A. 39:4-198, which in part states:
"These signs shall be so placed as to be easily read by pedestrians or operators of vehicles."
Consequently, to interpret the statute as requiring the messages in Figs. A-D to be rectangular with longer dimension vertical could only result in either illegally small lettering or in some messages being too high above the pavement.
Prior to the 1956 amendment to the Motor Vehicle and Traffic Regulation Act, N.J.S.A. 39:1-1 ("Definitions") included the following:
"`Sign' means a device, mark, marker, board, plate, or other contrivance so designed as apparently to guide traffic or to inform of a traffic regulation."
*213 The 1956 amendment deleted this definition of sign and in its place substituted:
"`Official traffic control devices' means all signs, signals, markings, and devices not inconsistent with this subtitle placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning, or guiding traffic." (N.J.S.A. 39:1-1).
The use of the word "sign" and "message" is not synonymous. A "sign" is a physical object of "metal or comparable durable material" (N.J.S.A. 39:4-183.8) of minimum dimension (N.J.S.A. 39:4-183.9) of a certain color (N.J.S.A. 39:4-183.7; 183.17) carrying a "message" (N.J.S.A. 39:4-183.10).
The Legislature in N.J.S.A. 39:4-183.7 and in N.J.S.A. 39:4-183.17 (a) did not say "shape of message". "Shape" as used in these sections describes the sign and not the message. As such each of the illustrative signs conform.
Considering next the color inversions found in the parking restriction messages in Figs. A, B, C and F, N.J.S.A. 39:4-183.6 provides:
"The Director of the Division of Motor Vehicles may determine the character, type, location, wording or symbol, and use of all traffic signs on the highways of this State; may adopt a manual and specifications for a uniform system of traffic signs consistent with the provisions of this act for use upon public highways within the State. Such uniform system shall correlate with and so far as possible conform to the system then current as specified in the `Manual on Uniform Traffic Control Devices for Streets and Highways.'"
On January 2, 1962 the Acting Director of the Division of Motor Vehicles deposited with the Secretary of State a copy of the "Manual on Uniform Traffic Control Devices for Streets and Highways". This Manual was prepared by a joint committee consisting of representatives from the American *214 Association of State Highway Officials, Institute of Traffic Engineers, National Committee on Uniform Traffic Laws and Ordinances, National Association of County Officials and the American Municipal Association, and was published by the Federal Bureau of Public Roads.
The Director filed this Manual in accordance with the provisions of Title 39 and indicated to the Secretary of State that he had adopted this Manual as the official State Manual and specifications for a uniform system of traffic signs, markings, signals, islands, traffic controls for highway construction and maintenance operations and signing for Civil Defense, "except for those portions which are in conflict with Title 39 of the Revised Statutes." (Letter, Jan. 2, 1962, Acting Director of Motor Vehicles to Secretary of State).
There is no doubt but that the Legislature intended to make provision for "a uniform system of traffic signs". See N.J.S.A. 39:4-183.6. Courts also have expressed the wisdom of public policy in the promotion of uniformity in the regulation of traffic. See Eveler v. Atlantic City, 91 N.J.L. 135, 137 (Sup. Ct. 1918); State v. Callaghan, 46 N.J. Super. 289, 292 (Cty. Ct. 1957). The Eveler case was recently cited with approval by the Supreme Court in Visidor Corp. v. Cliffside Park, 48 N.J. 214, at page 223 (1966). There Justice Jacobs spoke of advancing "the interests of safety and uniformity in traffic regulation." See also Librizzi v. Plunkett, 126 N.J.L. 17, 20 (Sup. Ct. 1940).
Who now was to determine where conflict with Title 39 existed, if any, by the broad terms of the Manual's adoption? It is the Director who is permitted (by N.J.S.A. 39:4-183.6) to determine "the character, type, location, wording or symbol, and use of all traffic signs on the highways of this State * * *." The Director may complain but has not. The plaintiff may only do so if the Director has failed in a mandatory requirement or if the municipal action is clearly inconsistent.
The Manual provides:
*215 "For emphasis the word NO or the numeral showing the time limit in hours or minutes may be in a reversed color arrangement in the upper left-hand corner of the sign, i.e., in white on a rectangular area of red or green."
The Manual provisions are consistent with the entire over-all purpose of the statute. The public will not be misled in any way because the "2 HOUR LIMIT" has a green background with white letters as opposed to a white background with green letters. The time limitation, which is most important, will stand out more clearly. Is not this emphasis precisely that which will put the public on better notice or warning?
If one important purpose of the statute is to bring into sharp focus that which is prohibited and for what period, it would seem that an emphatic color inversion would be entirely consistent with notice to the public as a most attention-getting method.
The statute provides that the design of all traffic signs shall conform to the specifications adopted by the Director (N.J.S.A. 39:4-183.9). The Director has adopted the Manual which permits color inversion. It is concluded therefore that the inversions as demonstrated are completely consistent with the overall purpose of the statute.
To the foregoing protests is added the "multiple messages" on one sign.
We cannot add language to clarify that which plaintiff contends was intended nor can we do the same for defendants. The conclusion to be reached must be based entirely on what the Legislature attempted to accomplish and how practical is the approach of the adversary positions.
The statute requires that prohibited or limited parking signs "shall be placed at the first and last point where the legal requirement is effective and at intervals not greater than 250 feet" (N.J.S.A. 39:4-183.17 (c)). N.J.S.A. 39:4-183.13 makes provision for lateral distance from the pavement or roadway:
*216 "Where a raised curb exists, traffic signs shall be set so that no part of the sign should be less than twelve inches back of the curb line. Where no curb exists, traffic signs shall be erected at the outside edge of the graded shoulder."
If we assume one message to one sign area, then we must find a veritable forest of signs placed in straight line at each beginning and ending point and each 250 feet therein. This would mean that in the situation where ordinances provided for prohibitive, exclusionary and restrictive signs, three separate signs the same distance from the curb would stand in very close proximity.
It seems absurd to conclude, as plaintiff would wish us to do, that in a Fig. A situation the following signs would stand side by side or in single file and separately and distinctly provide in individual posts and signs:
1) NO PARKING 7-9:30 A.M. EXCEPT SATURDAYS & SUNDAYS;
2) NO STOPPING OR STANDING 4-6 P.M. EXCEPT SATURDAYS & SUNDAYS;
3) 1 HOUR LIMIT METERED PARKING 9:30 A.M.-4 P.M. MONDAY to FRIDAY;
4) 1 HOUR LIMIT 7 A.M.-6 P.M. SATURDAYS ONLY.
If we adopt plaintiff's contention we would then have four separate signs at the same level from the ground at the first and last point of the effective requirement and at each interval not greater than 250 feet.
The forest hidden in the multitude of trees would certainly be an adequate defense to the unfortunate operator of a vehicle who went from sign to sign to learn what was prohibited and what permitted.
We are not dealing here with high speed highways, speed limits, danger or caution messages. This case involves the exasperated driver moving slowly and desperately searching for a place to park. This driver has time to study the single sign with the multiple message at one stop or hesitation. *217 It would be dangerous indeed to creep from sign to sign to sign to see what he can or cannot do.
The "Manual" makes it clear that more than one message may appear on a single sign. (Manual, p. 47).
If the City were to follow the Draconian principle and place a message or messages with letters so small that the readibility is so impaired as to fail to give adequate notice, a good defense to a summons for illegal parking might be made out. However, the multiple messages in and of themselves do not invalidate these signs. Other contentions advanced by plaintiff have been considered and they are without merit.

V. TRAFFIC SIGNALS
Plaintiff questions the manner in which the City of Newark proceeded in placing traffic signals throughout the City. By "traffic signals" reference here is only to the operation, installation and maintenance of the traffic lights at various intersections throughout the City.
Defendant, City of Newark, adopted a single ordinance which it believes fully complied with the legislative mandate. This ordinance did not establish the location of a single traffic signal in the City. It was an ordinance which delegated to the Bureau of Traffic and Signals the duty of determining without further formal municipal legislative action where such traffic lights controlling traffic movement should be placed.
The Legislature delegated to the City of Newark the power to regulate and control traffic within its borders. Such regulation is required to be within the precise formula as set forth in the statutory delegation. In Hackensack Water Co. v. Ruta, 3 N.J. 139 (1949), the Court said:
"The State has sovereign and absolute jurisdiction and control of the roads, streets and highways within its borders. Supervision and control of public highways is exercisable directly by the Legislature, and indirectly by the municipalities and other local governmental agencies to whom the power has been delegated. The local governing *218 body has in this behalf only such powers as have been delegated by the State's legislative body." [citing cases] (Emphasis added). (at p. 146)
An opinion of the New Jersey Attorney General applies these principles to the regulation of traffic in municipal streets. It was stated in Formal Opinion No. 5, N.J. Attorney General (1955) that:
"There is no inherent power vested in a municipality by which it may legally restrict the right of the public to the free use of streets and roads. Any right of the municipality to pass ordinances and resolutions regarding the flow of traffic over its streets and highways can arise only by legislative grant; * * *"
N.J.S.A. 39:4-197 under a general overall article "Powers of Municipalities, Counties and Highway Commissioner" reads:
"No municipality shall pass an ordinance or resolution on a matter covered by or which alters or in any way nullifies the provisions of this chapter or any supplement to this chapter; except that a municipality may pass ordinances or resolutions, or by ordinances or resolutions may authorize the adoption of regulations by the board, body or official having control of traffic in the public streets, regulating special conditions existent in the municipality on the subjects and within the limitations following:
(1) Ordinance.
a. Altering speed limitations as provided in section 39:4-98 of this Title;
b. Limiting use of streets to certain class of vehicles;
c. Designating 1-way streets;
d. Regulating the stopping or starting of street cars at special places such as railroad stations, public squares or in front of certain public buildings;
e. Regulating the passage or stopping of traffic at certain congested street corners or other designated points;
f. Regulating the parking of vehicles on streets and portions thereof including angle parking as provided in section 39:4-135 of this Title;
g. Regulating the parking of vehicles upon land owned or leased and maintained by the municipality, a parking authority or the board of education of a school district, including any lands devoted to the public parking of vehicles, the entrances thereto and exits therefrom;
h. Designating streets or roads upon which heavy commercial vehicles may be required to use low gear in descending steep declivities and providing for the use of such gear thereon;

*219 i. Designating school zones and school crossings in the vicinity of school buildings which are not located on territory contiguous to a highway.
(2) Ordinance or resolution.
a. Designating through streets as provided in article 17 of this chapter (39:4-140 et seq.);
b. Designating and providing for the maintenance as `no passing' zones of portions of highway where overtaking and passing or driving to the left of the roadway is deemed especially hazardous.
(3) Ordinance, resolution or regulation.
a. Designating stops, stations or stands for omnibuses and taxis;
b. Designating curb loading zones."
(Emphasis added).
Although occasionally "or" is determined to be read in the conjunctive, the principles of statutory construction absent a contrary legislative intent require that the word "or" should be considered to have been used disjunctively rather than conjunctively. Showell v. Horn, 65 N.J. Super. 374 (Law Div. 1961); see also Howard v. Harwood's Restaurant Co., 25 N.J. 72 (1957).
It is apparent from a reading of the statute that to apply the conjunctive interpretation would result in a meaningless sentence. For example, "* * * a municipality may pass ordinances or resolutions, [and] by ordinances or resolutions may authorize the adoption of regulations by the board, body or official * * *". This would make no sense at all. The disjunctive permits this part of the introductory sentence to be read in one of two ways: "* * * a municipality may pass ordinances or resolutions regulating special conditions existent in the municipality on the subjects and within the limitations following * * *" or in the alternative "* * * a municipality by ordinances or resolutions may authorize the adoption of regulations by the board, body or official having control of traffic in the public streets, regulating special conditions existent in the municipality on the subjects and within the limitations following * * *."
Pursuant to this section, the City of Newark did pass an ordinance giving the Bureau of Traffic and Signals the authority to regulate the passage or stopping of traffic *220 at certain congested street corners or other designated points by the use of traffic signals. N.J.S.A. 39:4-120.1 reads:
"Official traffic control signals shall be placed only by the authority of a public body or official having jurisdiction as authorized by law and only for the purpose of regulating traffic."
It is the conclusion of this court that the City of Newark did follow the statutory mandate of N.J.S.A. 39:4-197 in delegating the power to the Bureau of Traffic and Signals by ordinance.
It is admitted that prior to the placement or removal of any traffic signal, the Bureau of Traffic and Signals notified the Director of the Division of Motor Vehicles and received approval. Plaintiff argues that each and every time a signal is placed, removed, relocated or retimed, the City must follow the formalities required for the passage of an ordinance. The cost for advertising alone should permit an inference that the Legislature never intended this to be. Additionally, such conception would render meaningless and useless the Division of Motor Vehicles' "Traffic Signal Application" form which has been utilized by Newark's Bureau of Traffic and Signals in notifying the Director of the Division of Motor Vehicles of its traffic signal intentions. This form provides for initial approval for a one year period and after installation and inspection "final approval". This the Director has power to do under N.J.S.A. 39:4-120:
"The director may determine the character, type, location, placing and operation of all traffic control signal devices on the highways of this State."
Attention is called to the distinction between the use of the word "shall" in N.J.S.A. 39:4-120.1 and "may" in N.J.S.A. 39:4-120. It is concluded that even if there were a failure to get approval in each specific instance, complaint may only be made by the Director of Motor Vehicles as against the municipality since the word "may" is a word *221 of permissive use or permissive adoption and the word "shall" is mandatory.
The question arises, however, as to whether the ordinance which gave the authority to the Bureau of Traffic and Signals was required to have been approved by the Director of the Division of Motor Vehicles prior to its effectiveness. N.J.S.A. 39:4-202 provides:
"No resolution, ordinance or regulation passed, enacted or established under authority of this article, shall be effective until submitted to and approved by the director as provided in section 39:4-8 of this Title."
N.J.S.A. 39:4-8 in relevant part reads as follows:
"No ordinance or resolution concerning, regulating or governing traffic or traffic conditions, adopted or enacted by any board or body having jurisdiction over highways, nor any such regulation promulgated by the State Highway Commissioner, shall be of any force or effect, unless the same is approved by the director or has been approved by the Commissioner of Motor Vehicles or the Traffic Commissioner according to law."
The sections under consideration contrast sharply with N.J.S.A. 39:4-120, considered above. There the word "may" is used and the Director of Motor Vehicles is given broad discretionary powers with regard to specific traffic signals. It was concluded that the Director alone can complain of municipal failure in specific instances to comply with the section. In any event, the Director has, in fact, prescribed and adopted a Manual and specifications for a system of traffic control signals and plaintiff does not allege that the City of Newark with respect to any particular signal has departed from the Manual and specifications or has failed to receive approval upon filing of the Director's application form.
On the other hand, the Legislature in N.J.S.A. 39:4-202 and N.J.S.A. 39:4-8 has used the word "shall" and the statute leaves no room for maneuver. The conclusion *222 reached therefore is that the plaintiff herein can question the failure of the municipality to perform that which the statute explicitly requires. It is admitted that the ordinance of the City of Newark empowering the Bureau of Traffic and Signals has never been submitted to and approved by the Director. This is contrary to the mandatory provisions of N.J.S.A. 39:4-202 and N.J.S.A. 39:4-8 and therefore the ordinance is ineffective. The ordinance is one delegating municipal power under N.J.S.A. 39:4-197. As such, the ordinance is one "passed, enacted or established under authority of [Article 21 of Chapter 4 of Title 39]" and pursuant to N.J.S.A. 39:4-202 it must have the Director's approval before it is effective. N.J.S.A. 39:4-8 is of similar import. It is acknowledged that the Bureau of Traffic and Signals placed the traffic control signals. Since the Bureau was empowered by an ordinance which had to be approved by the Director in accordance with N.J.S.A. 39:4-202 and N.J.S.A. 39:4-8, the Bureau without such prior approval cannot at present legally be considered "a public body or official having jurisdiction as authorized by law" (N.J.S.A. 39:4-120.1). Therefore the Bureau's activity with regard to traffic signals, notwithstanding Director approval in specific instances on the forms supplied, was without authority.
It is incumbent upon the City to submit and secure the approval of the Director for the ordinance delegating power for traffic signals to the Bureau of Traffic and Signals to be effective.
In the interim, while awaiting approval, it is suggested that the City consider taking emergency action by resolution pursuant to N.J.S.A. 39:4-197.3 as to the existing traffic control signals.
Plaintiff has asked for affirmative relief in the event the action of the City is found to have been ultra vires. Plaintiff is directed to move promptly upon notice for an early hearing as to the extent of such affirmative relief including in such motion the settlement of a form of order in conformity with this opinion.